IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

Case No. 21-13593-HH

---

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*

*v.*

PENNCO, LLC, and
CALH HOLDING CORP.,
*Appellants*,

and

BYRAMJI JAVAT
*Defendant-Appellant*.

---

---

**APPELLANTS'
INITIAL BRIEF**

---

| | Stephen James Binhak, Esq. |
| | THE LAW OFFICE OF STEPHEN |
| | JAMES BINHAK, PLLC |
| | One Southeast Third Ave., Suite 2600 |
| | Miami, Florida 33131 |
| | Telephone: (305) 361-5500 |
| | binhaks@binhaklaw.com |
| | *Counsel for Appellants* |

**CERTIFICATE OF INTERESTED PERSONS**
**AND**
**CORPORATE DISCLOSURE STATEMENT**

*Appellants*, Pennco, LLC, and Calh Holding Corp. submit this list, which includes the trial judge, and all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this review:

1. Stephen James Binhak, Esq., *Attorney for Appellants*

2. The Law Office of Stephen James Binhak, PLLC, *Attorney for Appellanst*

3. Ariana Fajardo Orshan, Esq., *Attorney for Plaintiff-Appellee*

4. David Turken, Esq., *Attorney for Plaintiff-Appellee*

5. John Shipley, Esq., *Attorney for Plaintiff-Appellee*

6. Brett Geiger, Esq., *Attorney for Plaintiff-Appellee*

7. Adrienne E. Rosen, Esq., *Attorney for Plaintiff-Appellee*

8. Emily M. Smachetti, Esq., *Attorney for Plaintiff-Appellee*

9. Pennco, LLC, *Appellant*

10. Pennco Trust, *member of Pennco, LLC*

11. Calh Holding Corp., *Appellant*

12. Calh Trust, *shareholder of appellant*

13. Proton HealthCare, Ltd., *predecessor of Calh Holding Corp.*

14. Amicorp Trustees (Delaware), Inc., *trustee of Calh Trust and Pennco Trust*

15. Byramji Javat, *defendant in the underlying criminal case*

16.     Howard Milton Srebnick, *attorney for Mr. Javat*

17.     Black Srebnick Kornspan & Stumpf, *attorney for Mr. Javat*

18.     Marcos Beaton, *attorney for Mr. Javat*

19.     James Siprell, *defendant in the underlying criminal case*

20.     Samuel Joseph Rabin, *attorney for Mr. Siprell*

21.     Luis Alberto Soto, *defendant in the underlying criminal case*

22.     Rhonda Anne Anderson, *Attorney for Mr. Soto*

23.     Rhonda A. Anderson, P.A., *Attorneys for Mr. Soto*

24.     Robert John Becerra, *attorney for Mr. Soto*

25.     Becerra Law, P.A., *attorneys for Mr. Soto*

26.     Sunil Chopra, *defendant in the underlying criminal case*

27.     David Moses Edelstein, *attorney for Mr. Chopra*

28.     The Edelstein Firm, *attorneys for Mr. Chopra*

29.     William Armando, *defendant in the underlying criminal case*

30.     Simon Patrick Dray, *attorney for Mr. Armando*

31.     Emanuel George Daskos, *defendant in the underlying criminal case*

32.     Carl Francis Schoeppl, Jr., *attorney for Mr. Daskos*

33.     Schoeppl Law, *attorneys for Mr. Daskos*

34.     Carlos Daniel Grande, *attorney for Mr. Daskos*

35.     WH Legal, *attorneys for Mr. Grande.*

36.     Hon. Donald M. Middelbrooks, *District Court Judge*

Pursuant to Federal Rule of Appellate Procedures 26.1 and Eleventh Circuit Rules 26.101 through 26.1-3, *Intervenor-Appellee*, Pennco, LLC makes the following statement as to corporate ownership:

Pennco, LLC is a Delaware Limited Liability Company.

Amicorp Trustees (Delaware), Inc. as trustee of Pennco Trust is the sole member of Pennco, LLC.

Calh Holding Corp. (formerly Proton HealthCare, Ltd.) is a Delaware Limited Liability Company.

Amicorp Trustees (Delaware), Inc. as trustee of Calh Trust is the sole shareholder of Calh Holding Corp.

No publicly traded company or corporation has an interest in the outcome of the case or appeal.

_____ */s/ Stephen James Binhak* _____
Stephen James Binhak

## STATEMENT REGARDING ORAL ARGUMENT

Pennco, LLC, and Calh Holding Corp. request oral argument in this matter.

Pennco, LLC, is the sole record title owner of an apartment in Washington, D.C. Calh Holding Corp. is the sole record title owner of a warehouse and related property in Georgia (together the "Realty"). A separate irrevocable Delaware trust with an independent trustee owns each entity, and neither entity is a defendant in the underlying criminal case.

Without making any finding that the defendant actually owned the Realty and without conducting any pre-deprivation hearing, the District Court entered a Preliminary Order of Forfeiture (the "POF") which forfeited the Realty in its entirety as substitute property. In this way, the District Court violated Pennco's and Calh Holding's due process rights (by forfeiting their real property without providing a pre-deprivation hearing) and acted without authority under the forfeiture laws (which only allow substitute forfeiture of the defendant's property).

Pennco and Calh Holding filed notices of claim and verified petitions regarding the Realty, and the District Court conducted ancillary proceedings under the forfeiture laws. The District Court determined neither company had standing to make the claims and dismissed the petitions. The District Court erred because it: (1) never found that the Realty was the defendant's property and therefore never triggered the forfeiture laws and never acquired jurisdiction to conduct the ancillary

proceedings; and (2) employed the incorrect legal standard and made clearly erroneous factual findings during the ancillary proceedings.

Because there does not appear to be another case in this Circuit which addresses similar facts, Pennco, LLC and Calh Holding Corp. believe oral argument will aid the Court in applying the facts of this case to the developing case law.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT      I

STATEMENT REGARDING ORAL ARGUMENT      i

TABLE OF CONTENTS      iii

TABLE OF CITATIONS      v

STATEMENT OF JURISDICTION      1

STATEMENT OF THE ISSUES      2

STATEMENT OF THE CASE      4

Course of Proceedings and Disposition Below      6

STATEMENT OF THE FACTS      9

I. Mr. Javat Pled Guilty And The Court Entered A Preliminary Order of Forfeiture
Against Him      9

II. The United States Sought to Forfeit Substitute Assets to Satisfy Mr. Javat's
Forfeiture Obligations      9

III. Pennco and Calh Holding Attempted to Intervene and Prevent The Forfeiture
of their Property      10

IV. The District Court Forfeited the Realty Without Allowing Calh Holding and
Pennco to Intervene      11

STANDARD OF REVIEW      21

SUMMARY OF THE ARGUMENT      21

A. The District Court Did Not Have Jurisdiction to Enter the POF, To Proceed
With the Ancillary Proceedings, Or to Enter the Final Order of Forfeiture      21

B. The District Court's Order Dismissing the Verified Petitions and the Final Order
of Forfeiture Are Legally and Factually Defective      24

ARGUMENT AND CITATIONS OF AUTHORITY                                          27

I.   The District Court Did Not Have Jurisdiction to Enter the POF, To Proceed
With the Ancillary Proceedings, Or to Enter the Final Order of Forfeiture     27

A. Federal Courts May Only Act Within Their Jurisdictional Limits and the
Forfeiture Laws Only Provide Jurisdiction Over the Defendant's Property       27

B. The District Court Never Determined the Realty Was Mr. Javat's Property and
Therefore Never Acquired Jurisdiction Under the Forfeiture Laws               31

C. The District Court's Standing Determination Cannot Cure the Jurisdictional
Problem                                                                       33

D. The District Court Violated Pennco's and Calh Holding's Due Process Rights
                                                                              35

E. The Lack of Jurisdiction Renders Defective the Evidentiary Hearing, the Order
Dismissing the Verified Petitions, and the Final Order of Forfeiture          38

II. The District Court's Order Dismissing the Verified Petitions and the Final Order
of Forfeiture Are Legally and Factually Defective                             41

A. The District Court Applied the Wrong Legal Standards                       41

B. The District Court's Findings are Clearly Erroneous                        49

CONCLUSION                                                                    55

# TABLE OF CITATIONS

**Opinions**

**United States Supreme Court**

*Honeycutt v. United States*,
137 S. Ct. 1626 (2017)………………………………2, 20, 22, 25, 28, 29, 48

*Jennings v. Stephens*,
574 U.S. 271 (2015)……………………………………………………22, 33

*Taylor v. Sturgell*,
553 U.S. 880 (2008)……………………………………………….....22, 34

*Kokkonen v. Guardian Life Insurance Company of America*,
511 U.S. 375, 377 (1994)……………………………………………21, 27

*Steel Co. v. Citizens for a Better Environment*,
523 U.S. 83, 94 (1998)…………………………………………………22, 35

*United States v. James Daniel Good Real Property*,
510 U.S. 43 (1993)…………………………………………………23, 36, 37

*Parklane Hosiery Co. v. Shore*,
439 U.S. 322 (1979)…………………………………………….23, 34, 35

*Armstrong v. Manzo*,
380 U.S. 545 (1965)……………………………………….........................36

*United States v. Corrick*,
298 U.S. 435 (1936)…………………………………………………..1, 33

*Michell v. Maurer*,
293 U.S. 237 ……………………………..……………………………...32

*Ellenwood v. Marietta Chair Co.*,
158 U.S. 105 (1895) ……………………………………………...…..…23, 39

*Ex parte McCardle,*
　　74 U.S. (7 Wall.) 506, 514 (1868) …………………………..………28, 35


**United States Courts of Appeals**

*United States v. Kennedy,*
　　630 Fed.Appx 955 (11th Cir. 2015)…………………………………………..21

*Jennings v. Stephens,*
　　574 U.S. 271  (2015)  …..……………………………………...........22, 33

*United States v. ADT Services,* Inc.,
　　522 Fed. Appx 480 (11th Cir. 2013)……………………….........24, 25, 45

*United States v. Seher,*
　　562 F.3d 1344 (11th Cir. 2009)…………………………………………….39

*United States v. Shefton,*
　　548 F.3d 1360 (11ᵗʰ Cir. 2008) ……………………………………...25, 46

*United States v. Browne,*
　　505 F.3d 1229 (11th Cir. 2007)……………………………………………21

*United States v. Pease,*
　　331 F.3d 809 (11th Cir. 2003)……………………………………….30, 34

*Sikes v. Teledine, Inc.,*
　　281 F.3d 1350 (11th Cir. 2002)………………….…………………..22, 33

*United States v. 1461 W. 42nd St.,*
　　251 F.3d 1329 (11th Cir. 2001)……………………………………………37

*United States v. Gilbert,*
　　244 F.3d 888 (11th Cir. 2001)………….15, 18, 20, 23, 24, 30, 38, 40, 41, 43

*University of S. Alabama v. American Tobacco Co.,*
　　168 F.3d 405 (11ᵗʰ Cir. 1999)……………………………….22, 28, 32, 35

*United States v. 408 Peyton Rd.*,
    162 F.3d 644 (11th Cir. 1998)……………………………………………36, 37

*United States v. 2751 Peyton Wood Trail*, S.W.,
    66 F.3d 1164 (11ᵗ Cir. 1995)……………………………………………36

*Hays v. Gulf Oil*,
    821 F.2d 287 (5ᵗ Cir. 1987) ……………………………………………39

*United States v. $38,000 in United States Currency*,
    816 F.2d 1538 (11ᵗʰ Cir. 1987)……………………………………………44

*United States v. Coffman*,
    574 F. App'x 541 (6th Cir. 2014)……………………………………………13

*United States v. Holy Land Foundation for Relief and Development*,
    722 F.3d 677 (5th Cir. 2013)………………………………..…………………...13

*Iselin v. Meng*,
    269 F.3d 343 (5ᵗ Cir. 1959)…………………………………………...39

*United States v. Daugerdas*,
    892 F.3d 545 (2d Cir. 2018)……………………………………………..48


**United States District Courts**

*See United States v. Canela*,
    2019 U.S. Dist. LEXIS 103478 (M.D. Tenn. 2019)………………………30

*United States v. Cox*,
    2017 WL 3927668 (E.D.N.C. Sept. 7, 2017), *aff'd on other grounds,* 743
Fed. Appx. 509 (4th Cir. 2018)……………………………………………...39

*Ford Motor Credit Co. v. New York City Police Dept.*,
    394 F.Supp.2d 600 (S.D.N.Y. 2005)…………………………………………….36

**Florida Supreme Court**

*Advertects, Inc. v. Sawyer Industries, Inc.*,
    84 So. 2d 21, 23-24 (Fla. 1955) )……………………….……………………47

*Palmer v. Greene*,
    159 Fla. 174, 176-77 (Fla. 1947)……………………….……………………..40

**Florida District Courts of Appeal**

*Gasparini v. Pordomingo*,
    972 So. 2d 1053, 1055 (Fla. 3d D.C.A. 2008) ……………….………25, 48, 49

*Hinton v. Gold*,
    813 So. 2d 1057, 1059 (Fla. 4th DCA 2002) …………….……………….....40

**United States Constitution**

Article III……………………………………………………………………..38, 45

**Statutes**

18 U.S.C. §  981……………………………………………………………..6, 9, 11

18 U.S.C. § 1349…………………………………………………....…………6, 9

18 U.S.C. § 3231…………………………………………………………........1

21 U.S.C. § 853………………….....2, 3, 5, 9, 10, 11, 13, 14, 15, 29, 31, 38, 40, 46

28 U.S.C.§1291…………………………………………………………....…1

**STATEMENT OF JURISDICTION**

The United States District Court originally had subject matter jurisdiction over this case pursuant to 18 U.S.C. § 3231 because the United States was prosecuting Mr. Javat under the laws of the United States.

The District Court lacked jurisdiction to conduct the ancillary forfeiture proceedings that led to this appeal because the District Court proceeded without first finding that the proceedings involved "property of the defendant."

This Court has jurisdiction over this case pursuant to 18 U.S.C. § 1291 because the August 20, 2021 Order on Verified Petitions and the August 30, 2021 Final Order of Forfeiture ("FOF") are appealable orders. Even though the District Court acted without jurisdiction during the forfeiture proceedings, this Court has jurisdiction to correct the error below. *See United States v. Corrick*, 298 U.S. 435, 440 (1936).

# STATEMENT OF THE ISSUES

Pennco, LLC, is the sole record title owner of an apartment in Washington, D.C. Calh Holding Corp. is the sole record title owner of a warehouse and related property in Georgia (together the "Realty"). A separate irrevocable Delaware trust with an independent trustee owns each entity, and neither entity is a defendant in the underlying criminal case.

After finding the Realty was "potentially" the Defendant's property, the District Court entered the Preliminary Order of Forfeiture ("POF") against the Realty as substitute property under 21 U.S.C. § 853(p). In turn, Pennco and Calh Holding (after unsuccessfully attempting to intervene in the forfeiture proceedings) each filed A Notice of Claim and Verified Petition to challenge the POF.

The District Court held an evidentiary hearing under 21 U.S.C. § 853(n)(6), determined that Pennco and Calh Holding did not have standing to challenge the POF, dismissed their claims, and entered the Final Order of Forfeiture ("FOF"). Under the circumstances, Pennco and Calh Holding present the following issues to this Court:

1.      Did the District Court fail to provide Due Process under the Fifth Amendment, exceed its jurisdiction, contravene *Honeycutt v. United States*, 137 S. Ct. 1626 (2017), and violate the forfeiture statutes by performing the following acts without any finding that the Realty was the defendant's property: (a) entering the

POF; (b) conducting the ancillary proceedings generally (and the evidentiary hearing under 21 U.S.C. § 853(n)(6) specifically); (c) dismissing the Verified Petitions; and (d) entering the Final Order of Forfeiture?

2.     Did the District Court commit error by employing the wrong legal standards to consider whether Pennco and Calh Holding had standing to challenge the POF?

3.     Are the District Court's factual findings that Pennco and Calh Holding lack standing to challenge the POF clearly erroneous?

## STATEMENT OF THE CASE

Byramji Moneck Javat pleaded guilty to conspiracy to commit wire fraud. The superseding indictment included forfeiture allegations against "all property constituting or derived from, proceeds obtained directly or indirectly, as the result of such violation."

The District Court entered a POF which imposed a forfeiture money judgment against Mr. Javat. To satisfy this judgment, the United States filed a motion to forfeit the Realty as substitute property. Rather than limiting the forfeiture request to any interest that Mr. Javat might have in the Realty, the United States asked the Court to forfeit the Realty in their entirety.

Pennco, LLC, is the sole record title owner of the apartment, and Calh Holding Corp. is the sole record title owner of the warehouse. A separate irrevocable Delaware trust with an independent corporate trustee owns each entity, and neither entity is a defendant in the underlying criminal case. When they learned the United States was seeking to forfeit their property, Pennco and Calh Holding filed a motion to intervene and opposed the forfeiture.

After denying the motion to intervene and granting the Motion for Forfeiture, the District Court entered a POF which "forfeited and vested in the United States of America" the Realty, and allowed "[a]ny duly authorized law enforcement agency [to] seize and take possession of the forfeited property according to law." The

District Court, though, never found the Realty was Mr. Javat's property. Instead, the District Court held the Realty was "potentially" Mr. Javat's property.

In this way, (a) the District Court entered an invalid POF; and (b) Pennco and Calh Holding lost their real property without ever having the chance to be heard—a due process violation. Pennco and Calh Holding appealed.

Pennco and Calh Holding each filed a Notice of Claim and Verified Petition to challenge the POF. Each company claimed the POF was invalid for several reasons including that the District Court never found the Realty was the defendant's property.

In response, the United States filed a "Motion for Order Compelling Petitioners to Show Cause Why Their Petitions Should Not be Dismissed" for lack of standing. After requiring and reviewing sworn statements from Pennco and Calh Holding, the District Court determined an evidentiary hearing was necessary to determine whether Pennco and Calh Holding lacked standing because they were Mr. Javat's straw owners or nominees.

Still without any finding that the Realty was the Defendant's property, the District Court held an evidentiary hearing on the petitions pursuant to 21 U.S.C. § 853(n)(6). In this way, the District Court proceeded without jurisdiction.

Ultimately, the District Court determined Pennco and Calh Holding lacked standing to purse their claims. The District Court indicated it considered the

jurisdiction arguments and rejected them without explanation. Subsequently, without applying state law, the District Court concluded: (1) Mr. Javat "is the only real party in interest with respect to the Calhoun Warehouse and the Washington, D.C. Apartment," and (2) there is no basis for finding "Calh and Pennco would suffer an actual injury if the properties were forfeited, as all the evidence offered at the hearing supports the conclusion that the properties are actually [Mr.] Javat's."

In this way, the District Court applied the wrong legal standard and made clearly erroneous factual findings.

## Course of Proceedings and Disposition Below

On March 12, 2019, a Southern District of Florida grand jury returned a Superseding Indictment against Mr. Javat. Count I charged Mr. Javat with conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349. The Superseding Indictment also contained forfeiture allegations which provided that if Mr. Javat was convicted under § 1349, he would forfeit: "all property constituting or derived from, proceeds obtained directly or indirectly, as the result of such violation." (D.E. 145).

On August 19, 2019, Mr. Javat plead guilty to Count I (D.E. 418).

On March 5, 2020, the District Court entered a POF which imposed a $26,272,279.45 forfeiture money judgment against Mr. Javat pursuant to 18 U.S.C. § 981(a)(1)(C) (D.E. 536).

6

On May 11, 2020, the United States filed a Contested Motion for Order of Forfeiture for Substitute Property in which the United States sought to forfeit the Realty (D.E. 579).

On June 2, 2020, Pennco and Calh Holding filed a Motion to Intervene and Memorandum in Opposition to the motion for forfeiture of substitute property (D.E. 596).

On August 28, 2020, the court denied the Motion to Intervene and granted the motion to forfeit Pennco's and Calh Holding's real property (D.E. 641).

On September 2, 2020, the District Court entered the POF (D.E. 643).

On September 2, 2020, Pennco and Calh Holding each filed a Notice of Appeal from the Order denying the Motion to Intervene (D.E. 641) and Preliminary Order of Forfeiture. (D.E. 643). On March 9, 2022, the Court dismissed this appeal for lack of subject matter jurisdiction (Case No. 20-13310-H).

On October 2, 2020, Pennco and Calh Holding filed Notices of Claim and Verified Petitions (D.E. 671, 672).

On February 9, 2021, the United States filed a Motion for Order Compelling Petitioners to Show Cause Why their Petitions Should Not Be Dismissed (D.E. 693). On February 11, 2021, the District Court entered an Order to Show Cause directing Pennco and Calh Holding to respond to the United States' motion, and deferred ruling on whether to set a hearing on the Verified Petitions (D.E. 695). On February

23, 2021, Pennco and Calh Holding filed their responses to the District Court's Order (D.E. 697).

On March 12, 2021, the District Court entered an Order Requiring Sworn Statements from Pennco and Calh Holding (D.E. 698). Pennco and Calh Holding filed the statements on March 19, 2021 (D.E. 701).

On June 2, 2021, the District Court set an evidentiary hearing on the Verified Petitions (D.E. 729). The District Court conducted the evidentiary hearing on July 15, 2021. On August 20, 2021, the District Court entered the Order on Verified Petitions and dismissed Pennco's and Calh Holding's petitions (D.E. 742), and on August 30, 2021, the District Court entered the FOF (D.E. 744).

On October 15, 2021, Pennco and Calh Holding filed their Notices of Appeal (D.E. 745, 746).

## STATEMENT OF THE FACTS

I.    Mr. Javat Pled Guilty And The Court Entered A Preliminary Order of
Forfeiture Against Him.

On March 12, 2019, a Southern District of Florida grand jury returned a
Superseding Indictment against Mr. Javat.   Count I charged Mr. Javat with
conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349.  The Superseding
Indictment also contained forfeiture allegations which provided that if Mr Javat was
convicted under § 1349 he would forfeit: "all property constituting or derived from,
proceeds obtained directly or indirectly, as the result of such violation." (D.E.145).

On August 19, 2019, Mr. Javat pled guilty to Count I (D.E. 418).

On March 5, 2020, the District Court entered a POF which imposed a
$26,272,279.45 forfeiture money judgment against Mr. Javat pursuant to 18 U.S.C.
§ 981(a)(1)(C).  The Court found this amount represented Mr. Javat's "net income
from the diversion scheme during the wire fraud conspiracy period," and therefore
represented "proceeds traceable to the offense of conviction." (D.E. 536).

II.    The United States Sought to Forfeit Substitute Assets to Satisfy Mr.
Javat's Forfeiture Obligations.

The United States claimed it could not locate sufficient directly forfeitable
property to satisfy Mr. Javat's forfeiture obligations.  As a result, on May 11, 2020,
without identifying which of the five preconditions of 21 U.S.C. § 853(p)(1)(A)-(E)

justified the additional forfeiture, the United States sought to forfeit the Realty as Mr. Javat's substitute assets. The United States filed a Contested Motion for Order of Forfeiture for Substitute Property (D.E. 579).

The United States claimed that during Mr. Javat's bond hearing, Mr. Javat's counsel argued Mr. Javat had "sufficient interest in [the Realty] to offer them as collateral for his bond." (D.E. 579, pg. 3-4).

Consequently, the United States sought forfeiture of the Realty as Mr. Javat's substitute assets pursuant to 21 U.S.C. § 853(p). (D.E. 579, pg. 6).

III.   Pennco and Calh Holding Attempted to Intervene and Prevent The Forfeiture of their Property.

In fact, Mr. Javat does not own either property. Since before the return of the indictment, Pennco has been the apartment's sole record title holder, and Calh Holding has been the Georgia warehouse's sole record title holder (D.E. 596-1, 596-2; D.E 734, Ex. 10, 26).

Despite these facts, the United States asked the District Court not just to forfeit Mr. Javat's interest in the Realty, but to forfeit the Realty in their entireties. The United States' proposed order said: "Pursuant to 21 U.S.C. § 853(p), the following substitute property is hereby forfeited and vested in the United States of America: [the Realty]. The proposed order added: "Any duly authorized law enforcement

agency may seize and take possession of the forfeited property according to law."
(D.E. 579-2, ¶¶ 1-2).

In response, Pennco and Calh Holding filed a Motion to Intervene and Memorandum in Opposition to the Motion for Forfeiture of Substitute Property (D.E. 596). Pennco and Calh Holding argued due process required that they receive a hearing before the forfeiture of their real property, and that the District Court did not have jurisdiction to order forfeiture of property that Mr. Javat did not own and that was outside the judicial district.

IV. The District Court Forfeited the Realty Without Allowing Pennco and Calh Holding to Intervene.

On August 28, 2020, the District Court granted the United States' motion to forfeit the Realty and denied the Motion to Intervene (D.E. 641). First, without identifying an applicable avenue under 21 U.S.C. § 853(p)(1), the District Court held the United States could proceed under 21 U.S.C. § 853(p) to effect a substitute asset forfeiture pursuant to 18 U.S.C. § 981.

Second, the District Court ruled the Realty are *potentially* Mr. Javat's property. Although recognizing "it may be unorthodox," the District Court relied on statements from Mr. Javat's bond hearing in which Mr. Javat's counsel indicated the Realty could be a collateral source for a pre-trial surety bond. The District Court explained: section 853's provisions are to be liberally construed; Mr. Javat's counsel

indicated Mr. Javat had the "ability to mortgage" the Realty; and Mr. Javat "has consistently refused to disclose his personal financial information." (D.E. 641, pg. 11). The District Court wrote:

> The relevant testimony occurred when the Magistrate Judge was determining what assets [Mr. Javat] possessed that could be used in connection with obtaining a bond. Relevant here, [Mr. Javat's] counsel asserted that the Washington D.C. Apartment and Calhoun Warehouse could be utilized as they were owned by [Mr. Javat's] family trust. (DE 84 at 49-51). Counsel elaborated:
>
>> When I say it's a trust, it's the family. The family has ownership of the entities that is the titleholder of the properties. There are two different entities. Each entity owns one piece of real estate, one in Georgia, one in Washington, DC. Each of those entities is owned by the Javat family trust.
>>
>> … the owner[s] of the property, the owner[s] of record, are corporations, and the owners of those corporations are the Javat family. Both of those properties are free and clear.
>
> (*Id.* at 50:5-10, 50:21-24). Ultimately, the Magistrate Judge granted bond and conditioned bond on (among other things) Defendant effecting "a mortgage in favor of the Government for [the] Washington, DC apartment and [the] Calhoun, Georgia warehouse." (DE 105 at 43:15-16). In the event Defendant failed to appear, title for these properties would transfer to the Government. (*Id.* at 43:17-18).

(D.E. 641, pg. 9-10)

The District Court concluded: "the Government has established that [Mr. Javat] **potentially has an interest in the substitute property that is subject of the Government's Motion.**" (D.E. 641, pg. 12) (emphasis added). Critically, the District Court never found Mr. Javat actually owned or had any interest in the Realty.

Third, the District Court ruled the United States produced sufficient evidence (although "far from compelling") that Mr. Javat's tainted property was unavailable. In this respect, the District Court accepted a government agent's affidavit which "essentially recite[d] the statute verbatim." (D.E. 641, pg. 12).

Fourth, the District Court exercised jurisdiction over the Realty even though neither property was in Florida. The District Court explained 21 U.S.C. § 853(l) grants district courts "jurisdiction to enter orders as provided in this section *without regard to the location of any property* which may be subject to forfeiture under this section or which has been ordered forfeited under this section." The District Court also cited *United States v. Holy Land Foundation for Relief and Development*, 722 F.3d 677, 690 (5th Cir. 2013): "Thus, the district court's power to enter orders regarding [the defendant's] property located outside of its jurisdiction derives from its personal jurisdiction over the defendant, and is not dependent upon seizure of a physical object[.]" (D.E. 641, pg. 12 n. 4).

At this point, the District Court turned to the Motion to Intervene and *United States v. Coffman*, 574 F. App'x 541, 562-64 (6th Cir. 2014). The *Coffman* court concluded that even though the United States "did not prove the properties in question were [the defendant's]," the properties were still forfeitable as substitute assets. Based on *Coffman*, the District Court explained:

> Defendant Javat implies that he does not own the properties. However, the Government has pointed to some information suggesting the contrary. The

> Government has further provided an affidavit stating that after conducting a reasonable search, the Government has been unable to locate any tainted property. They now seek forfeiture of substitute assets. If Javat has any interest in the substitute property, the Government is entitled to (and has just acquired) such property up to the value of the monetary forfeiture judgment. If Javat has no interest, then the Government just acquired nothing

(D.E. 641, pg. 14).

The District Court acknowledged Pennco and Calh Holding were trying to intervene to defend their title to the Realty. Nevertheless, the District Court ruled that 21 U.S.C. 853(k)'s bar on intervention (especially in combination with 21 U.S.C. 853(n)'s directions regarding how third parties may pursue their interests in a forfeiture proceeding) precluded Pennco and Calh Holding from intervening and asserting their sole ownership of the Realty. The District Court also held Pennco and Calh Holding sought to intervene under the Federal Rules of Civil Procedure which do not apply in criminal proceedings.

According to the August 28, 2020 Order, the United States obtained only Mr. Javat's interest, if any, in the Realty. Consequently, the Court's Orders should not have provided the United States with any direct and immediate property right to the Realty.

Regardless, in the POF, the District Court ruled the Realty was "forfeited and vested in the United States of America," and that "[a]ny duly authorized law enforcement agency may seize and take possession of the forfeited property according to law." (D.E. 643, ¶¶ 1-2).

In this way, the District Court forfeited the Realty in their entireties without finding Mr. Javat owned any interest in either property, and without allowing Pennco and Calh Holding to be heard. The District Court also stripped Pennco and Calh Holding of valuable rights in the Realty, including the rights to sell and to use and enjoy the Realty without interference. Further, the District Court placed the burden of proof to quiet title on Pennco and Calh Holding.

In fact, given these circumstances, Pennco and Calh Holding should have been in a position to either:

(1) Do nothing and have their ownership in the Realty remain intact and secure. *See United States v. Gilbert*, 244 F.3d 888, 917 (11th Cir. 2001) (noting that because criminal forfeiture only authorized forfeiture of the defendant's interests, the "only recourse" for the United States was "to institute a separate quiet title action in California"); or

(2) Rebut any evidence that undermined Calh Holding's and Pennco's ownership of the Realty, rather than having the burden of proving ownership, priority, or entitlement to reclaim their properties. *See Gilbert*, 244 F.3d at 917 n.72 (noting that in a properly located quiet title action, the United States would bear the burden of proof to show its superior title).

Instead, because the POF's language purported to forfeit the Realty under § 853(p) and vested the Realty in the United States, Pennco and Calh Holding were required affirmatively to protect their lost property—without a factual finding or legal ruling that justified them losing anything.

Pennco and Calh Holding each filed a Notice of Claim and Verified Petition to assert their rights to the Realty (D.E. 671, 672). Beyond raising the jurisdictional arguments above, Pennco and Calh Holding proved: they were independent corporations in good standing and operating in the ordinary course; independent irrevocable Delaware trusts (with independent trustees) owned them; and they were the record title holders to the Realty. The undisputed evidence from the July 15, 2021, evidentiary hearing confirmed these facts.

In particular, Pennco demonstrated it became a valid Delaware limited liability company on February 24, 2016, and remains in good standing. *See* Ex. 4 (Pennco limited liability operating agreement), Ex. 5 (Certificate of Formation), Ex. 12 (Certificate of Good Standing).

Pennco further demonstrated Pennco Trust (an irrevocable Delaware established on February 23, 2016) owns 100% of Pennco and that independent trustees control the trust. *See* Ex. 1 (Trust Agreement of Pennco Trust), 2 (Membership Certificate), 3 (State of Delaware Certificate of Trust), 6 (Membership Certificate), Ex. 8 (Local Representation Agreement).

Pennco also proved that in a February 26, 2016, meeting, the Trustees agreed to allow Pennco to purchase the Pennco Apartment. *See* Ex 9 (Unanimous Written Consent). On February 29, 2016, Pennco acquired the deed to the apartment, and

the deed remains recorded with the Washington, D.C. Recorder of Deeds. *See* Ex 10 (Deed), 11 (HUD-1 settlement statement).

Similarly, Calh Holding proved its predecessor, One Chek, Ltd. was formed in May 2000, changed its name to Proton Healthcare in March 2003, changed its name to Calh Holding Corp. in March 2018, and remains in good standing. *See* Ex 13 (One Chek Organization by Written Consent), 14 (One Check Share Certificates), 15 (One Check Certificate of Incorporation), 16 (One Check Bylaws), 17 (Certificate of Amendment to change name), 19 (corporate documents to change name to Calh Holding), Ex. 24 (Certificate of Good Standing).

Calh Holding then demonstrated that on May 28, 2018, it transferred all of its shares to Calh Trust's independent Trustee-- an irrevocable Delaware trust with two independent trustees and established January 15, 2008. *See* Ex. 20 (Share Transfer Agreement), 21 (Trust Agreement of Calh Trust).

Calh Holding further proved its board of directors approved the purchase of the Georgia warehouse in February 2008, and obtained the deed to the property on February 14, 2008. The deed remains recorded with the Gordon County Clerk. *See* Ex 25 (Unaimous Written Consent to purchase Georgia property), 26 (Deed).

In short, the uncontested evidence demonstrated Pennco and Calh Holding were the sole record owners of the Realty before: the indictment, Mr. Javat pleaded guilty, and the District Court entered the POF. The District Court agreed: "The

Calhoun Warehouse and the Washington, D.C. Apartment are owned by Calh and Pennco… ." (D.E. 742, pg. 11).

Nevertheless, the District Court determined Mr. Javat "used Calh and Pennco as "straw owners" to conceal his financial affairs in that the properties are truly Javat's properties, despite the fact that they are titled in Calh's and Pennco's names." (D.E. 742, pg. 11).

First, the District Court rejected without analysis "Calh and Pennco's argument that the forfeiture laws do not apply here because Javat does not hold title to the properties and that, as such, this is merely a state law quiet title action." The District Court added: "Calh and Pennco failed to identify any authority that supports that proposition under these circumstances." (D.E. 742, pg. 9).

Although they agree Mr. Javat does not hold title to or actually own the Realty, Pennco and Calh Holding made a slightly different argument. As noted above, Pennco and Calh Holding argued the forfeiture laws do not apply because the District Court never found the Realty is the property of the defendant. Under these circumstances, *United States v. Gilbert*, 244 F.3d 888 (11th Cir. 2001) requires a quiet title hearing under Florida law. *See id*. at 917 and n.72 ("Thus, the Government's only recourse in its attempt to recapture those interests that the Gilberts and the Trust may have derived from Benjamin Kramer is to institute a separate quiet title action in California.").

18

Ultimately, the District Court determined Pennco and Calh Holding lacked standing to pursue the Verified Petitions because "[Mr.] Javat used Calh and Pennco as 'straw owners' to conceal his financial affairs in that the properties are truly Javat's properties, despite the fact that they are titled in Calh's and Pennco's names." In reaching this conclusion, the District Court found:

> Calh and Pennco did not present any evidence which suggests that they took any action with respect to those properties that was not ordered by Javat and for Javat's sole benefit, or that they used those properties to carry out their legitimate business activities. In fact, at his bond hearing, Javat's representations led the Magistrate Judge to include as a condition of his bond that he effect a mortgage in favor of the Government on those properties and transfer them to the Government should he fail to appear." (D.E. 742. Pg.

> Mr. Javat's co-defendent (who died before any criminal judgment was entered) had a management role in Pennco and Calh Holding which "is in line with the Government's theory that Calh and Pennco are "straw owners" of these properties, and that "Calh and Pennco have not offered any meaningful evidence as to who is currently pursuing the Verified Petitions as their authorized representative." (D.E. 742. Pg. 12).

> There was an absence of evidence as to Calh's control, and (1) Mr. Javat was Calh's sole shareholder and director when the Calhoun Warehouse was purchased; (2) James Sipprell was involved in managing Calh Holding; (3) Javat was "considering setting the Calhoun warehouse into a trust structure"; (4) Mr. Javat's, Calh Holding's, and Pennco's funds were interchangeable; and (5) when he formed the Calh Trust, although Mr. Javat was not a beneficiary, he indicated to the trustees his wish "that during [his] lifetime the trust [be] operated primarily for [his] benefit" and the trustees consult with him regarding the administration of the trust. (D.E. 742. Pg. 12-13).

> The Local Representation Agreement and Unanimous Written Consent of Amicorp Trustees identify Mr. Javat as Pennco's "ultimate beneficial owner" and explain that Javat sought to purchase the Washington apartment in Pennco's name. Emails involving Mr. Javat indicate: he initially considered putting the property in his name or his wife's name; purchased the property

with his own funds, and placed the property in a limited liability company owned by a trust to conceal his financial affairs. Pennco did not have a bank account for at least ten months of its existence; and Pennco failed to identify any evidence of its use or possession of the property or of its legitimate business activities. (D.E. 742. Pg. 13-14).

These findings contain several legal errors. The District Court: (a) violated *United States v. Gilbert*, 244 F.3d 888 (11ᵗʰ Cir. 2001), because it acted without a finding that the Realty was Mr. Javat's property; (b) used the wrong legal standard to evaluate constitutional and statutory standing; (c) failed to apply Florida law when considering whether it was appropriate to pierce the corporate veil; and (d) applied the relation back doctrine to substitute assets in violation of *United States v. Honeycutt*, 137 S. Ct. 1626 (2017).

The District Court also ignored critical items which made its factual findings clearly erroneous.

On October 15, 2021, Pennco and Calh Holding filed timely Notices of Appeal (D.E. 745, 746) to challenge the order dismissing the Verified Petitions (D.E. 742), and the FOF (D.E. 744).

## STANDARD OF REVIEW

The Court reviews the District Court's legal conclusions regarding criminal forfeiture *de novo*. *See United States v. Kennedy*, 630 Fed.Appx 955, 956 (11th Cir. 2015).

The Court reviews the District Court's factual findings regarding criminal forfeiture for clear error. *See United States v. Browne*, 505 F.3d 1229, 1278 (11th Cir. 2007).

## SUMMARY OF THE ARGUMENT

The District Court committed error when it: (a) entered the POF and proceeded with a forfeiture hearing without first finding the Realty was actually the defendant's property; and (b) determined Pennco and Calh Holding lacked standing to contest the forfeiture.

A.  The District Court Did Not Have Jurisdiction To Enter the POF, To Proceed With The Ancillary Proceedings, Or To Enter The Final Order of Forfeiture.

Federal courts may only act when the Constitution or a federal statute grants them authority.  The District Court proceeded under 21 U.S.C. §835(p) which only allows the United States to confiscate the "property of the defendant." *See Kokkonen*

*v. Guardian Life Insurance Company of America*, 511 U.S. 375, 377 (1994); *Honeycutt v. United States*, 137 S. Ct. 1626 (2017).

Because it only determined Mr. Javat "potentially has an interest" in the Realty (D.E. 641, pg. 12), the District Court never triggered the forfeiture laws and therefore never acquired jurisdiction: to enter the POF; to conduct the ancillary proceedings (including the July 15, 2021 evidentiary hearing); or to enter the FOF. Without jurisdiction, the District Court only had power to dismiss the case. *See University of S. Alabama v. American Tobacco Co.*, 168 F.3d 405, 410 (11ᵗʰ Cir. 1999).

The District Court continued, though. It found Pennco and Calh Holding lacked standing to pursue the Verified Petitions because they were "straw men" for Mr. Javat. This ruling could not solve the fundamental jurisdiction deficiency for two reasons.

First, because the United States never appealed it, the District Court's ruling that the Realty was only potentially Mr. Javat's was final, and the doctrine of issue preclusion barred United States from challenging it later (and it bars revisiting the ruling during this appeal). *See Jennings v. Stephens*, 574 U.S. 271, 281-82 (2015); *Sikes v. Teledine, Inc.*, 281 F.3d 1350, 1367 n. 44 (11th Cir. 2002); *Taylor v. Sturgell*, 553 U.S. 880, 992 (2008). Second, left with an incurable jurisdictional deficiency, the District Court could only withdraw. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998).

Even if it had the power to continue, the District Court violated Pennco's and Calh Holding's due process rights by entering the POF and depriving them of their real property without allowing them to defend first. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 n.7 (1979); *United States v. James Daniel Good Real Property,* 510 U.S. 43, 54 (1993).

Without a factual finding sufficient to trigger the forfeiture laws, the ancillary proceedings created two more constitutional errors.

First, without the forfeiture laws' nationwide jurisdiction, the District Court (in the Southern District of Florida) lacked subject matter jurisdiction over the Washington, D.C. apartment and the Georgia warehouse, and violated the local action rule. *See United States v. Gilbert*, 244 F.3d 888, 920 (11th Cir. 2001) *Ellenwood v. Marietta Chair Co.*, 158 U.S. 105 (1895). Second, without the forfeiture powers in place, the District Court had no legal basis to shift the burden of proof to Pennco and Calh Holding. *See United States v. Gilbert*, 244 F.3d 888, 917 and n. 72 (11th Cir. 2001).

These legal errors render invalid the POF, the ancillary proceedings, the order dismissing the Verified Petitions, and the FOF.

B. <u>The District Court Erroneously Determined Pennco And Calh Holdings Lacked Standing</u>.

At the evidentiary hearing, the District Court applied the wrong legal standards, and it made clearly erroneous factual conclusions. Specifically, the District Court committed four legal errors when it determined that Pennco and Calh Holding lacked standing because Mr. Javat used Pennco and Calh Holding as straw owners. (D.E. 742, pg. 11).

First, in addition to ruling the Realty was only potentially Mr. Javat's property, the District Court forfeited the actual Realty, and not Mr. Javat's interest in the companies that owned the Realty. Because Mr. Javat had no interest in the Realty, in the words of *United States v. Gilbert*, 244 F.3d 888, 922-23 (11th Cir. 2001), this determination gave the United States "nothing." Further, this ruling was unappealed, and therefore could not be altered. *See United States v. Gilbert*, 244 F.3d 888, 914-17 (11th Cir. 2001).

Second, when it tried to cure this deficiency by finding that Pennco and Calh Holding lacked standing to proceed, the District Court misapplied the law. As limited liability companies with record title for the Realty, Pennco and Calh Holding are owners and had constitutional standing to pursue the Verified Petitions. *See United States v. ADT Services,* Inc., 522 Fed. Appx 480, 489 (11th Cir. 2013); *United States v. ADT Services,* Inc., 522 Fed. Appx 480, 489 (11th Cir. 2013). By following

and satisfying every statutory requirement for making their Verified Petitions, Pennco and Calh Holding established statutory standing. *See United States v. ADT Services,* Inc., 522 Fed. Appx 480, 489 (11th Cir. 2013). The Court did not apply these standards.

Third, when addressing the standing issue, the District Court essentially pierced the corporate veil. The District Court, however, failed to apply Florida law, and it therefore failed to make appropriate findings to support its conclusion. *See United States v. Shefton*, 548 F.3d 1360, 1364 (11ᵗʰ Cir. 2008); *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d D.C.A. 2008).

Fourth, when it conducted the veil piercing analysis, the District Court relied on facts that predated the POF. In this regard, the District Court erred because the relation back doctrine does not apply to substitute forfeitures. *See Honeycutt*, 137 S. Ct. 1626, 1633 (2017).

These errors render the District Court's standing conclusions unsustainable.

Lastly, even if it could have properly placed the burden of proof on Pennco and Calh Holding, the District Court did not make sufficient factual findings to pierce the corporate veil under Florida law, and the record contains insufficient evidence to reach this conclusion.

The corporate documents undisputedly demonstrate Pennco and Calh Holding were lawfully established and sustained, and operated for legitimate purposes.

Pennco's sole purpose was to purchase and own the Washington apartment (which it obtained in 2018), and Calh Holding's business was to purchase, own, and operate the Georgia warehouse (which it obtained in 2008).

The undisputed facts further demonstrate Mr. Javat did not dominate either company. There is also no evidence that Pennco or Calh Holding engaged in any fraudulent activity or injured anyone. Also, no evidence shows Mr. Javat exercising control over the Realty after he irrevocably transferred it to the trusts.

To hold otherwise, the District Court relied on insufficient evidence, made unsupported conclusions, and relied on evidence that precedes the POF (in violation of the relation back doctrine). In this way, the District Court's committed clear error.

## ARGUMENT AND CITATIONS OF AUTHORITY

I.    The District Court Did Not Have Jurisdiction To Enter the POF, To Proceed With The Ancillary Proceedings, Or To Enter The Final Order of Forfeiture.

Because it never determined the Realty was Mr. Javat's property, the District Court lacked jurisdiction to enter the POF, to conduct the ancillary proceedings (including the July 15, 2021 evidentiary hearing), to enter the order dismissing Pennco's and Calh Holding's Verified Petitions, and to enter the FOF.

A. Federal Courts May Only Act Within Their Jurisdictional Limits And The Forfeiture Laws Only Provide Jurisdiction Over The Defendant's Property.

As courts of limited jurisdiction, federal courts may only act when the Constitution or a federal statute grants them authority, and they may not expand their power by judicial decree. For this reason, every cause presumptively lies outside of the federal courts' limited jurisdiction. *See Kokkonen v. Guardian Life Insurance Company of America*, 511 U.S. 375, 377 (1994). Chief Justice Ellsworth explained this situation in one of the Supreme Court's earliest cases:

> A Circuit Court, however, is of limited jurisdiction; and has cognizance, not of cases generally, but only of a few specially circumstanced, amounting to a small proportion of the cases, which an unlimited jurisdiction would embrace. And the fair presumption is (not as with regard to a Court of general jurisdiction, that a cause is within its jurisdiction unless the contrary appears, but rather) that a cause is without its jurisdiction till the contrary appears.

*Turner v. Bank of North America*, 4 U.S. 8, 10 (1799).

A District Court which lacks subject matter jurisdiction is powerless to consider the merits of a dispute. *See University of S. Alabama v. American Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999).  As the Supreme Court directed in another of its earlier rulings: "Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868).

When it comes to forfeiting property untainted by crime, §835(p) is the controlling statute.  This law only allows the United States to confiscate the "property of the defendant." *See* §835(p)(2) ("In any case described in any of subparagraphs (A) through (E) of paragraph (1), the court shall order the forfeiture of any other property of the defendant, up to the value of any property described in subparagraphs (A) through (E) of paragraph (1), as applicable.").  *Honeycutt v. United States*, 137 S. Ct. 1626 (2017), explains this essential requirement.

Tony Honeycutt owned a hardware store, and his brother Terry Honeycutt worked there.  The store sold water purification products to drug dealers, and both brothers were convicted— Tony by plea, and Terry after a trial.  When it came to forfeiture for Terry, the United States argued Terry was jointly and severally liable for the unpaid forfeiture amount.  The district court refused to enter a forfeiture judgment against Terry because he was a salaried employee and had not personally received any of the profits from the sales.

Justice Sotomayor wrote there could be no joint and several liability in forfeiture because the criminal forfeiture statute only applies to criminal proceeds that the defendant acquired:

> Only if the Government can prove that one of these five conditions [set forth in 21 U.S.C. §853(a)] was caused by the defendant may it seize "any other property of the defendant, up to the value of" the tainted property—rather than the tainted property itself. This provision begins from the premise that the defendant once possessed tainted property as "described in subsection (a)," and provides a means for the Government to recoup the value of the property if it has been dissipated or otherwise disposed of by "any act or omission of the defendant."

> Section 853(p)(1) demonstrates that Congress contemplated situations where the tainted property itself would fall outside the Government's reach. **To remedy that situation, Congress did not authorize the Government to confiscate substitute property from other defendants or co-conspirators; it authorized the Government to confiscate assets only from the defendant who initially acquired the property and who bears responsibility for its dissipation.** Permitting the Government to force other co-conspirators to turn over untainted substitute property would allow the Government to circumvent Congress' carefully constructed statutory scheme, which permits forfeiture of substitute property only when the requirements of §§853(p) and (a) are satisfied. There is no basis to read such an end run into the statute.

*Honeycutt*, 137 S. Ct. 1634 (emphasis added).

Consistent with this requirement, ancillary proceedings cannot commence without a valid forfeiture order. 21 U.S.C. §853(n) only applies "[f]ollowing the entry of an order of forfeiture under this section… ." Along these lines, a third party making an application under §853(n) asserts "a legal interest in property which has been ordered forfeited to the United States pursuant to [21 U.S.C. §853]"— and only

the defendant's property is available for forfeiture. *See United States v. Pease*, 331 F.3d 809, 815 (11th Cir. 2003) ("…due to the absence of a forfeiture order in the judgment entered in the defendant's case, the United States did not acquire the defendant's interest in the subject property"); *United States v. Gilbert*, 244 F.3d 888, 918 (11th Cir. 2001) ("In other words, the district court allowed the forfeiture verdict to vanish, without any force or effect. As a result, the event triggering ancillary proceedings and seizure of the property never occurred.").

Relatedly, in his brief, Mr. Javat argues the Court should vacate the underlying forfeiture judgment for procedural and substantive error. To the extent that the underlying forfeiture judgment is invalid, the District Court also had no jurisdiction to proceed. Pennco and Calh Holding adopt Mr. Javat's arguments, and urge the Court to vacate the District Court's ruling for these reasons. *See United States v. Canela*, 2019 U.S. Dist. LEXIS 103478 (M.D. Tenn. 2019) (vacating a POF in a Third Party Petition proceeding based on *United States v. Pease*, 331 F.3d 809, 813-814 (11th Cir. 2003) because there was no monetary forfeiture judgment in effect for the United States to execute).

For these reasons, a District Court lacks authority to enter a POF, to adjudicate ancillary proceedings, or to enter a FOF unless the POF relates to property of the defendant.

B.  The District Court Never Determined the Realty Was Mr. Javat's Property
And Therefore Never Acquired Jurisdiction Under the Forfeiture Laws.

Because it never determined the Realty was Mr. Javat's property, the District Court never triggered the forfeiture laws or any of their powers.

As a result of his plea, the United States obtained a $26 million forfeiture money judgment against Mr. Javat (D.E. 536).  Significantly, this money judgment did not contain (and is not associated with) any finding that the Realty is Mr. Javat's or that he should forfeit it.  Subsequently, the United States asked the District Court to forfeit the Realty as substitute assets under 21 U.S.C. §853(p).  When it made the request (and to this day), the United States has never claimed the Realty is tainted or subject to direct forfeiture.

In addition, the District Court never determined the Realty was Mr. Javat's before granting the motion to forfeit the Realty.

Rather, the District Court only held Mr. Javat "potentially has an interest in the substitute property that is subject of the Government's Motion." (D.E. 641, pg. 12). In its Order on Verified Petitions, the District Court explicitly reiterated it was proceeding: (1) under the federal forfeiture laws set forth in 21 U.S.C. §853, and (2) without a finding that the Realty was the defendant's property.  The District Court explained:

> On August 28, 2020, I granted the Government's Motion for Order of Forfeiture for Substitute Property and denied Calh and Pennco's Motion to

Intervene. (DE 641). In that Order, I concluded that the Government had established that Javat potentially has an interest in the Calhoun Warehouse and the Washington, D.C. Apartment.

D.E. 742, pg. 2

Without a finding that the Realty was Mr. Javat's property, the District Court never unlocked the forfeiture laws' authority. Accordingly, the District Court lacked: (a) power to enter the POF; (b) jurisdiction to conduct the ancillary proceedings (including the July 15, 2021 evidentiary hearing); and (c) power to enter the FOF. Consequently, the POF, the ancillary proceedings, the order dismissing the Verified Petitions, and the FOF are invalid.

Moreover, the District Court was obligated to identify this jurisdictional deficiency and dismiss the case immediately. *See University of S. Alabama v. American Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999) ("A necessary corollary to the concept that a federal court is powerless to act without jurisdiction is the equally unremarkable principle that a court should inquire into whether it has subject matter jurisdiction at the earliest possible stage in the proceedings. Indeed, it is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking.").

The lack of jurisdiction below equally obligates this Court to dismiss this case. *See Michell v. Maurer*, 293 U.S. 237, 244 (1934) ("An appellate federal court must satisfy itself not only of its own jurisdiction, but also that of the lower courts in a

cause under review."); *United States v. Corrick*, 298 U.S. 435, 440 (1936) ("While the District Court lacked jurisdiction, we have jurisdiction on appeal, not of the merits but merely for the purpose of correcting the error of the lower court in entertaining the suit.").

This lack of jurisdiction invalidates the POF and everything that followed.

C. The District Court's Standing Determination Cannot Cure the Jurisdictional Problem.

When it dismissed the Verified Petitions, the District Court found "the properties are truly [Mr.] Javat's properties, despite the fact that they are titled in Calh's and Pennco's names." As a result, the District Court ruled Pennco and Calh Holding did not have standing to pursue the Verified Petitions.

One might argue this ruling creates a finding that Mr. Javat owns the property, invokes the forfeiture laws, and therefore cures the jurisdiction problem. For two reasons, though, this ruling cannot fix the underlying jurisdiction deficiency.

First, as explained above, the District Court never held the Realty was Mr. Javat's property before entering the POF. Because the United States never appealed this ruling, the ruling is final. *See Jennings v. Stephens*, 574 U.S. 271, 281-82 (2015); *Sikes v. Teledine, Inc.*, 281 F.3d 1350, 1367 n 44 (11th Cir. 2002) ("The plaintiffs, however, have not cross-appealed the district court's determination on this issue. The plaintiffs' failure to file a cross-appeal violates the requirement of Fed. R. App.

P.5(b)(2) and means that the plaintiffs have not preserved this issue for appeal."); *cf*

*United States v. Pease*, 331 F.3d 809, 817 (11th Cir. 2003) ("As we have noted, the

Government failed to appeal the defendant's sentence-- for failure of the district

court to order forfeiture as part of the sentence-- thus, the purported error is not

before us.").

Along these lines, the issue preclusion doctrine barred United States from

challenging this ruling below, and it bars a challenge in this appeal. The Supreme

Court has explained:

> A fundamental precept of common-law adjudication, embodied in the related
> doctrines of collateral estoppel and res judicata, is that a "right, question or fact
> distinctly put in issue and directly determined by a court of competent
> jurisdiction … cannot be disputed in a subsequent suit between the same
> parties or their privies… ." … Under collateral estoppel, once an issue is
> actually and necessarily determined by a court of competent jurisdiction, that
> determination is conclusive in subsequent suits based on a different cause of
> action involving a party to the prior litigation.

*Montana v. United States*, 440 U.S. 147, 154 ((1979); *Parklane Hosery Co. v. Shore*,

439 U.S. 322, 326 n.5 (1979). *See also Taylor v. Sturgell*, 553 U.S. 880, 992 (2008)

("Issue preclusion, in contrast, bars 'successive litigation of an issue of fact or law

actually litigated and resolved in a valid court determination essential to the prior

judgment,' even if the issue recurs in the context of a different claim.").

The United States (after successfully excluding Pennco and Calh Holding from

the hearing on the POF) had an unfettered opportunity to present any evidence that

Mr. Javat owned the Realty. Based on the evidence actually litigated, the District

Court determined the Realty was only ***potentially*** Mr. Javat's property— again, a finding insufficient to trigger the forfeiture laws and related jurisdiction.

Under the circumstances, by virtue of its own final ruling, the District Court lacked jurisdiction to conduct any forfeiture proceedings, including the evidentiary hearing which produced its standing ruling and the final forfeiture order. Consequently, both rulings are void. *See University of S. Alabama v. American Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999); *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868).

Second, courts may not create or cure jurisdiction retroactively. Instead, they must determine whether they have jurisdiction at the outset of a proceeding, and they must withdraw if jurisdiction is absent. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause."). The District Court simply had no authority to proceed.

At the same time, this jurisdictional defect is just the most fundamental of several fatal problems.

D.  The District Court Violated Calh Holding's and Pennco's Due Process Rights.

 Before entering the POF, the District Court refused to allow Pennco and Calh Holding to participate in the proceedings. In this way, the District Court failed to provide constitutionally mandated due process. *See Parklane Hosiery Co. v. Shore*,

439 U.S. 322, 327 n.7 (1979) ("It is a violation of due process for a judgment to be binding on a litigant who was not a party or a privy and therefore has never had an opportunity to be heard."). *See also Armstrong v. Manzo*, 380 U.S. 545, 550 (1965) (holding an *in personam* judgment violates due process if it purports to bind parties who are not before the court).

After this procedural error, the District Court deprived Calh Holding and Pennco of their title to the Realty because the POF forfeited the Realty in their entireties. *See Ford Motor Credit Co. v. New York City Police Dept.*, 394 F.Supp.2d 600, 612 (S.D.N.Y. 2005) ("The destruction of a cognizable property interest without due process of law violates the Due Process Clause.") (*citing James Daniel Good Real Property*, 510 U.S. at 48), *aff'd*, 503 F.3d 186, 194 (2d Cir. 2007).

The Supreme Court and this Court have held the Due Process Clause requires that real property owners receive a pre-deprivation opportunity to contest the potential forfeiture of their realty. *See United States v. James Daniel Good Real Property,* 510 U.S. 43, 54 (1993); *United States v. 2751 Peyton Wood Trail*, S.W., 66 F.3d 1164, 1166 (11th Cir. 1995). In fact, this Court has held the United States violates an owner's due process rights by failing to provide a pre-deprivation hearing even if the United States does not actually seize the property. *See United States v. 408 Peyton Rd.*, 162 F.3d 644, 652 (11th Cir. 1998) ("The Government therefore

deprived Richardson of due process when it seized 408 Peyton Road, notwithstanding its decision not to assert physical control over the property.").

In addition, this Court has held *en banc* that a real property owner is entitled to damages for a violation of *United States v. James Daniel Good Real Property,* 510 U.S. 43, 54 (1993):

> [W]e now conclude that when the Government fails to provide predeprivation notice and a hearing, but the property is found to be subject to forfeiture after the process due has been afforded, the proper remedy for a seizure in violation of the Fifth Amendment Due Process is the return of any rents received or other proceeds realized from the property during the period of illegal seizure.

*United States v. 408 Peyton Rd.*, 162 F.3d 644, 652 (11th Cir. 1998); *United States v. 1461 W. 42nd St.*, 251 F.3d 1329, 1334-35, 1340 (11th Cir. 2001) ("we hold that the district court properly concluded in this case that appellants were entitled only to a return of net rental proceeds after the court had subtracted operating expenses including mortgage payment amounts, repairs and utility expenses.").

Under the circumstances, Pennco and Calh Holding suffered a due process violation.

Moreover, this case's unique circumstances compounded the error. The District Court refused to allow Pennco and Calh Holding to protect their property prior to forfeiture (when the United States had the burden of proof), and then placed the burden of proof on Pennco and Calh Holding when they could finally challenge the forfeiture.

E. <u>The Lack Of Jurisdiction Renders Defective The Evidentiary Hearing, The Order Dismissing The Verified Petitions, And The Final Order Of Forfeiture</u>.

Although, the District Court had constitutional authority to consider a dispute involving the United States (*see* U.S. Const. art. III, § 2, cl. 1), the District Court lacked authority to exercise the forfeiture statutes' powers (particularly to conduct a hearing under §853(n)). In this way, the District Court made a second round of errors.

First, the District Court (in the Southern District of Florida) lacked subject matter jurisdiction over the Washington, D.C. apartment and the Georgia warehouse.

The forfeiture laws grant district courts nationwide jurisdiction over property, but only when the forfeiture laws apply. 21 U.S.C. §853(*l*) says: "The district courts of the United States shall have jurisdiction to enter orders as provided in this section without regard to the location of any property *which may be subject to forfeiture under this section or which has been ordered forfeited under this section*." (emphasis added).

This extraterritorial power exists because the forfeiture laws grant district courts *in personam* jurisdiction over the defendant and his/her property. *United States v. Gilbert*, 244 F.3d 888 (11th Cir. 2001), explains this point:

> In the case of criminal forfeiture, the district court has "jurisdiction to enter orders … without regard to the location of any property which may be subject

38

38

to forfeiture … or which has been ordered forfeited." The district court's power to enter orders relating to property outside the court's jurisdiction derives from its personal jurisdiction over the defendant. Because the defendant is before the court, the court has the power to adjudicate *his* ownership interest in property, by virtue of the criminal charges against him. Forfeiture of the convicted defendant's interest in illicitly obtained property appropriately punishes the defendant by separating him from his racketeering gains while leaving undisturbed the interests of innocent third parties who are beyond the court's jurisdiction. For this jurisdictional reason, an order of forfeiture imposed upon a defendant as a penalty for his wrongdoing "determines the government's title in property only as against the named defendants, while civil forfeiture actions which are brought in the jurisdiction where the *res* is located are *in rem* and determine the government's title in property as against the whole world."

*Id.* at 920; *See also United States v. Seher*, 562 F.3d 1344, 1370 (11th Cir. 2009).

Of course, without a finding that Mr. Javat actually owned the Realty, the District Court never triggered the forfeiture laws and only had jurisdiction within its judicial district. The District Court considered two real properties outside of its *in personam* and *in rem* jurisdiction.

Proceeding under these circumstances also violated the local action rule. *See, e.g.*, *Ellenwood v. Marietta Chair Co.*, 158 U.S. 105 (1895) ("By the law of England, and of those states of the Union whose jurisprudence is based upon the common law, an action for trespass upon land, like an action to recover the title or the possession of the land itself, is a local action, and can only be brought within the state in which the land lies."); *Hays v. Gulf Oil*, 821 F.2d 287 (5th Cir. 1987); *Iselin v. Meng*, 269 F.3d 343, 347 (5th Cir. 1959); *United States v. Cox,* 2017 WL 3927668 (E.D.N.C. Sept. 7, 2017), *aff'd on other grounds,* 743 Fed. Appx. 509 (4th Cir. 2018).

Second, there was no basis to shift the burden of proof to Pennco and Calh Holding.

Without the forfeiture laws (and particularly §853(n)(6) which imposes the burden shifting) in place, the United States was simply attempting to seize the Realty. As a result, the United States had the burden of proof in what was essentially a garden variety quiet title action. *See United States v. Gilbert*, 244 F.3d 888, 917 and n. 72 (11th Cir. 2001) (explaining that because criminal forfeiture only authorized forfeiture of the defendant's interests, the "only recourse" for the United States was "to institute a separate quiet title action in California" and noting that the United States would bear the burden of proof to show its superior title); *Palmer v. Greene*, 159 Fla. 174, 176-77 (Fla. 1947) ("in suits to quiet title the burden of proof rests on the plaintiff to show with clearness, accuracy and certainty not only validity of his own title but the invalidity or inferiority of the defendant's title or claim, unless such invalidity or inferiority be admitted by the defendant"); *Hinton v. Gold*, 813 So. 2d 1057, 1059 (Fla. 4th DCA 2002) ("Absent a default, a court will not quiet title to property unless the record clearly demonstrates the right to title in the claimant and the invalidity of the contesting claim or potential claim.").

These defects invalidate: (1) the order dismissing the verified petitions (D.E. 742), and (2) the FOF (D.E. 744).

II.    The District Court's Order Dismissing The Verified Petition And the
       Final Order of Forfeiture Are Legally And Factually Defective.

Beyond the jurisdictional problems, the District Court made two overarching errors at the evidentiary hearing.  First, the District Court applied the wrong legal standards.  Second, the District Court came to a clearly erroneous factual conclusion.

A. The District Court Applied The Wrong Legal Standards.

The District Court determined Pennco and Calh Holding lacked standing because Mr. Javat "used Calh and Pennco as 'straw owners' to conceal his financial affairs in that the properties are truly Javat's properties, despite the fact that they are titled in Calh's and Pennco's names." (D.E. 742, pg. 11).  In reaching this conclusion, the District Court committed four legal errors.

First, District Court violated *United States v. Gilbert*, 244 F.3d 888 (11th Cir. 2001).  The United States forfeited the Realty, not the companies that own the properties.  The United States never sought, and the District Court never entered any forfeiture order against Mr. Javat's ownership interests in Calh Holding and Pennco.

In *Gilbert*, the United States prosecuted Benjamin Kramer who owned a limited partnership in a general partnership called LCP.  Through a joint venture, LCP and PPA (another general partnership) owned The Bell Gardens Bicycle Club. The Club owned an exclusive license to run a card club, land with a building, and the card club business.

At trial, the United States asked the jury to forfeit the entire Club (including the land and the building), even though Mr. Kramer did not own the entire Club. Rather, Mr. Kramer was a limited partner in LCP which owned the Club in partnership with PPA. The jury agreed with the United States and returned a forfeiture verdict against Mr. Kramer that forfeited the entire Club.

Judge Tjoflat explained the jury could not forfeit the entire Club because Mr. Kramer never owed any part of the Club. Instead, Mr. Kramer owned a silent partnership interest in one of the general partnerships that owned the Club. As a result, when the United States obtained Mr. Kramer's interest in the Club, it held "nothing." Judge Tjoflat wrote:

> In addition to its vagueness and overbreadth, the verdict of forfeiture against Benjamin Kramer was improper on a more fundamental level. Benjamin Kramer never owned any part of the Club. The Club itself was a joint venture between two partnerships: PPA and LCP. Thus, the Joint Venture was the club's true owner.
>
> ***
>
> At most, then, what Benjamin Kramer owned was a silent partnership interest in LCP general partnership, which later became LCP, Ltd. Thus, it was Benjamin Kramer's silent interest in LCP, Ltd. that should have been targeted for forfeiture in the indictment, jury instructions, and special verdict forms, not the Bell Gardens Bicycle Club. Unfortunately for the Government, this was only made clear during the ancillary proceedings. Because the jury-- and the district court, by its initial order of forfeiture-- forfeited property that Kramer did not own, the Government holds nothing by virtue of the order of forfeiture against Benjamin Kramer.

*Id*. at 922-23 (internal citations omitted).

The same problem exists here.

The United States sought and obtained Mr. Javat's ownership interest in the Realty, not his interest in Pennco or Calh Holding. Moreover, based on the United States' uncontested evidence, the District Court made a final determination: (1) Mr. Javat was only potentially the owner of the Realty, and (2) the United States only acquired Mr. Javat's ownership in the Realty.

Since Pennco and Calh Holding are the Realty's undisputed record title holders, as in *Gilbert*, the United States acquired "nothing."

*Gilbert* also reveals why the District Court was powerless to fix the problem. The *Gilbert* district court tried to save its defective forfeiture order by issuing an Amended Order of Forfeiture and then made findings at the ancillary proceedings. In each case, the district court determined Mr. Kramer was the Club's straw owner.

Judge Tjoflat explained the district court could not lawfully amend the jury's original forfeiture findings:

> As a result of our 1996 opinion setting aside the order of forfeiture against Michael Gilbert, the Government is left with only that interest in property which belonged to Benjamin Kramer at the time it became subject to forfeiture. The problem, however, is that the exact nature of that interest is undetermined. In an attempt to correct fundamental errors made during the criminal trial, the district court modified the forfeiture verdict (returned on April 2) and initial order of forfeiture (entered on April 3) after it heard evidence in the ancillary proceedings. The resulting Amended Final Order purported to forfeit *Kramer's interest in LCP, Ltd.,* rather than the entire Bell Gardens Bicycle Club. The court made this change despite the fact that LCP, Ltd. was not named in the indictment, verdict, or initial order of forfeiture.

The Government, believing that the court's post-trial amendment was valid, now claims title to Kramer's interest in LCP, Ltd., rather than the Club.

* * *

The district court's post-trial findings, however, cannot retroactively amend the jury's verdict.

*Id*. at 914-17.

Judge Tjoflat added that even if the district court had the authority to make the amendments, the amendments would contradict prior rulings:

Let us assume, *arguendo,* that the district court *could* retroactively correct the forfeiture judgment against Benjamin Kramer, thereby giving the Government title to a fixed percentage of LCP, Ltd. …

One problem with this approach, however, is that the district court's prior findings on the issue of ownership are in direct conflict.

*Id.* at 916-17.

Both points apply here. The POF is based on the Court's final, unappealed ruling that Mr. Javat only potentially owns the Realty. Any subsequent finding that Mr. Javat actually owns the Realty necessarily contradicts the existing final ruling.

Second, at the United States' suggestion, the District Court tried to cure this deficiency by finding that Pennco and Calh Holding lacked standing to proceed because Mr. Javat was the real owner of Calh Holding and Pennco. When conducting this analysis, though, the District Court applied the wrong law.

To file a verified property claim, an entity must satisfy constitutional and statutory standing requirements. *See United States v. $38,000 in United States Currency*, 816 F.2d 1538, 1543 (11th Cir. 1987).

44

A possessory interest in property is sufficient to establish Article III standing, and state law determines this interest. *See United States v. ADT Services,* Inc., 522 Fed. Appx 480, 489 (11th Cir. 2013). Moreover, under Florida law, an LLC is an appropriate owner of property. *See United States v. ADT Services,* Inc., 522 Fed. Appx 480, 489 (11th Cir. 2013) ("Under [ ] Florida [ ] law, property acquired by an LLC is property of that LLC."). In fact, an LLC member cannot make a verified claim for an LLC because a member's property rights "arise[ ] only out of its membership in the LLC's owning those properties." *Id.* at 490.

Consequently, as record title owners of the Realty, Pennco and Calh Holding are owners and have constitutional standing to pursue the Verified Petitions. In this regard, it is noteworthy that although the District Court held there was no constitutional standing, the District Court specifically noted the evidence presented "clearly supported" the fact that "the properties at issue are owned by Calh and Pennco." (D.E. 742, pg. 9).

To establish statutory standing, a claimant must simply follow the rules for making the claim. *See United States v. ADT Services,* Inc., 522 Fed. Appx 480, 489 (11th Cir. 2013) ("The purpose of claimant's being required also to establish statutory standing is, *inter alia*, to "minimize the danger of false claims by requiring claims to be verified or solemnly affirmed").

Pennco and Calh Holding satisfied every one of §853(n)(2) and (3)'s requirements for making their claims. Both companies:

(1) filed their petitions within 30 days;

(2) had an authorized corporate representative execute the petitions under penalty of perjury, and

(3) set forth: (a) the nature and extent of their right, title, or interest in the property, (b) the time and circumstances of their acquisition of the right, title, or interest in the property, and (c) additional facts supporting their claim and the relief sought.

The District Court did not apply either standing analysis. If it did, the District Court would have determined Pennco and Calh Holding established constitutional and statutory standing.

Instead, the District Court committed its third error. The District Court failed to apply state law when determining that Pennco and Calh Holding lacked standing. *See United States v. Shefton*, 548 F.3d 1360, 1364 (11th Cir. 2008) ("The parties agree that we apply state law to determine the nature of the Fund's interest in the Forfeited Property. On the other hand, whether the Fund's interest in the Forfeited Property is superior, and thus renders the Forfeiture invalid under §853(n)(6) is a matter of federal law.").

The District Court specifically acknowledged Pennco and Calh Holding owned the Realty. As a result, to find that Mr. Javat was the Realty's true owner, the District Court was required to "pierce the corporate veil" under Florida law. The

District Court never performed this analysis, and the findings of fact do not support

veil piercing.

The Florida Supreme Court has set an extremely high bar for piercing the

corporate veil, even with closely held entities:

> Every corporation is organized as a business organization to create a legal
> entity that can do business in its own right and on its own credit as
> distinguished from the credit and assets of its individual stockholders. The
> mere fact that one or two individuals own and control the stock structure of a
> corporation does not lead inevitably to the conclusion that the corporate entity
> is a fraud or that it is necessarily the alter ego of its stockholders to the extent
> that the debts of the corporation should be imposed upon them personally. If
> this were the rule, it would completely destroy the corporate entity as a method
> of doing business and it would ignore the historical justification for the
> corporate enterprise system.
>
> We therefore hold that in order to justify the issuance of a rule directing
> individual stockholders to show cause why they should not be held personally
> accountable for the corporation's debts, there should be a preliminary showing
> that the corporation is in actuality the alter ego of the stockholders and that it
> was organized or after organization was employed by the stockholders for
> fraudulent or misleading purposes, or in some fashion that the corporate
> property was converted or the corporate assets depleted for the personal
> benefit of the individual stockholders, or that the corporate structure was not
> bona fidely established or, in general, that property belonging to the
> corporation can be traced into the hands of the stockholders.
>
> It isn't sufficient merely to show that the corporation exists and that there are
> a limited number of stockholders doing business in good faith through the
> corporate entity. From a procedural standpoint we hold that a showing similar
> to that suggested in summary above be made before the rule nisi is issued and
> directed against the individual stockholders. If this requirement were not
> made then every judgment against a corporation could be exploited as a
> vehicle for harassing the stockholders and entering upon fishing expeditions
> into their personal business and assets.

*Advertects, Inc. v. Sawyer Industries, Inc.*, 84 So. 2d 21, 23-24 (Fla. 1955).

As a result, piercing the corporate veil under Florida law requires three findings: (1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact non-existent and the shareholders were in fact alter egos of the corporation; (2) the corporate form was used fraudulently or for an improper purpose; and (3) the fraudulent or improper use of the corporate form caused injury to the claimant. "[E]ven if a corporation is merely an alter ego of its dominant shareholder or shareholders, the corporate veil cannot be pierced so long as the corporation's separate identity was lawfully maintained." *See Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d D.C.A. 2008).

The District Court never cited to or applied this standard (or any Florida decision regarding piercing the corporate veil). Rather, the District Court relied solely on general federal forfeiture authority for the undisputed proposition that only an owner of property has constitutional standing to make an ancillary forfeiture claim. Of course, as explained above, the answer to this question turns on state law.

The District Court made its fourth error during the straw man analysis because it considered ownership prior to the POF. The relation back doctrine does not apply to substitute forfeitures. *See Honneycutt*, 137 S. Ct. 1626, 1633 (2017); *United States v. Daugerdas*, 892 F.3d 545, 549 (2d Cir. 2018) ("… §853(c)'s relation back doctrine does not apply to substitute assets."). Moreover, even if the doctrine applied, the

recorded deeds reveal Pennco and Calh Holding held title before Mr. Javat's prosecution and conviction and before the Preliminary Order of Forfeiture.

Because of these errors, the District Court's conclusions regarding standing are unsustainable.

B. The District Court's Factual Findings Are Clearly Erroneous.

Even if it could appropriately place the burden of proof on Pennco and Calh Holding, the District Court did not make sufficient factual findings to substantiate piercing the corporate veil under Florida law, and the record does not contain sufficient evidence to reach this conclusion.

Specifically, the District Court never found (and could not find based on the record evidence) that: (1) Mr. Javat dominated Pennco and Calh Holding to the point where the companies had no independent existence; (2) that Mr. Javat used the corporate form fraudulently; and (3) anyone was injured by this fraudulent activity. Moreover, the District Court never determined Pennco and Calh Holding failed to maintain their separate identities lawfully. *See Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d D.C.A. 2008).

The undisputed evidence demonstrates Pennco and Calh Holding were lawfully established and sustained, and operated for legitimate purposes.

Pennco was established in 2016 and Calh Holding's predecessor was established in 2000 under Delaware law-- years before Mr. Javat's indictment. *See*

D.E. 734, Ex. 5 (Pennco Certificate of Formation), 15 (One Check Certificate of Incorporation). Along these lines, there is no dispute that Calh Holding and Pennco maintained their good standing under Delaware law through the date of the evidentiary hearing. *See* D.E. 734, Ex. 12 (Pennco Certificate of Good Standing), 25 (Calh Holding Certificate of Good Standing).

The undisputed evidence further shows Pennco's sole purpose was to purchase and own the Washington apartment (which it obtained in 2018), and that Calh Holding's business was to purchase, own, and operate the Georgia warehouse (which it obtained in 2008). *See* D.E. 734, Ex. 9 (Pennco Unanimous Written Consent), 25 (Calh Holding Unanimous Written Consent); 10 (Deed for Washington apartment); 26 (Deed for Georgia warehouse).

The undisputed facts further demonstrate Mr. Javat did not dominate either company.

An irrevocable Delaware trust owned each company and ultimately controlled the companies through independent trustees and their agents including James Siprell and Katherine Sipprell. Both trusts indicate: (1) "This Trust is irrevocable." D.E. 734, Ex. 3 (Pennco Trust, Art. II, 2.1(i)), 21 (Calh Holding Trust, Art. II, 2.1(i)).; and (2) "The purpose of the Trust, and the Trust shall have the power and authority, subject to the provisions of this Trust Agreement, to engage in the following activities … purchasing, owning, holding, selling, transferring, exchanging, leasing,

operating and/or managing (whether itself or through agents) the Trust Estate." *See* D.E. 734, Ex. 3 (Pennco Trust, Art. II, 2.1(f)), 21 (Calh Holding Trust, Art. II, 2.1(e)), 3 (Pennco State of Delaware Certificate of Trust).   Mr. Sipprell was a manager of Pennco and the sole director of Calh Holding.  Katherine Sipprell is secretary and Chief Financial Officer of Calh Holding. *See* D.E. 734, Ex. 4, pg. 13 (Pennco Operating Agreement); D.E. 736-1, Ex A, pg. 32 (Calh Holding 2020 State of Georgia Annual Registration).

In letters to the trustees of Pennco and Calh Holding, Mr. Javat explicitly conceded he had no control over the operation of the trust.  He wrote: "I understand that I cannot restrict your discretion or direct the way in which you exercise your powers under the trust… ." (D.E. 736-1, Ex. K, pg 185 (Pennco Letter) 36-1, Ex. V, pg 275 (Calh Holding Letter- unexecuted).

In addition, the record contains ample uncontested evidence of Pennco and Calh Holding preparing and filing documents to operate within and maintain the corporate form under state law. *See* (D.E. 734, Ex. 4 (Pennco Operating Agreement), 5 Pennco Certificate of Formation) 6, (Pennco Minutes of First Meeting), 7 (Pennco Assignment of EIN from IRS), 9 (Pennco Unanimous Written Consent to Purchase Washington Apartment), 12 (Pennco Certificate of Good Standing), 13 (Organization of One Check), 15 (One Check Certificate of Incorporation), 16 (Bylaws of One Check), 17 (Certificate of Amendment of Certificate of

Incorporation of One Check), 18 (Delaware Certificate of Change of Registered Agent of Proton Healthcare, 19 (Records Related to Name Change for Proton Healthcare to Calh Holding), 20 (Calh Holding Records of Share Transfer to Calh Trust), 21 and 22 (Calh Holding Records of Changing Registered Agent).

In particular, before purchasing the Washington apartment, Pennco first received permission from the Trustees, and Mr. Sipprell executed the purchase documents. *See* D.E. 734, Ex. 9. Similarly, before Proton Healthcare purchased the Georgia warehouse, the company's board of directors gave unanimous consent. *See* D.E. 734, Ex. 25.

There is also no evidence that Pennco or Calh Holding engaged in or were used for any fraudulent activity or injured anyone.

To hold otherwise, the District Court relied on insufficient evidence and made unsupported conclusions.

With regard to Calh Holding, the District Court noted Mr. Javat was Calh Holding's sole shareholder and director in 2008 when the company purchased the warehouse and in 2016 when Mr. Javat irrevocably placed his Calh Holding share in the Calh Trust. The District Court also relied on Mr. Javat's 2018 request to the Calh Holding Trustee to honor certain of his "wishes" even Mr. Javat explicitly noted that he could not restrict the trustees' discretion or direct the way they exercised their powers under the trust.

With regard to Pennco, the District Court relied on a 2016 letter which described Mr. Javat as the ultimate beneficial owner of Pennco and the fact that Mr Javat identified and signed the contract for the Washington apartment in his personal capacity. The District Court further noted Pennco did not have a bank account for approximately 10 months after purchasing the property.

Especially in light of the record evidence, none of these facts support piercing the corporate veil under Florida law. First, as noted above, the relation back doctrine does not apply to substitute assets forfeiture, and all of the District Court's findings are based on evidence which precedes the POF. As a result, the evidence is irrelevant.

Second, the District Court concentrated on Mr. Javat's corporate positions, emails, and conduct from as far back as 2008 and no later than 2018. Most of this evidence relates to conduct before the alleged fraud, and all of it concerns events before the indictment. Given this timing, the evidence is consistent with normal busines and estate planning, not fraud.

Third, none of the District Court's evidence shows Mr. Javat exercising control over the Realty after he irrevocably transferred it to the trusts. Even the bail hearing evidence indicates the trusts were controlling the Realty. As the District Court held when granting the POF: "Mr. Javat's counsel asserted that the

Washington, D.C. Apartment and Calhoun Warehouse could be utilized as they were owned by [Mr. Javat's] family trust." (D.E. 641, pg 9).

As a result, the District Court's factual finding that Pennco and Calh Holding are straw owners is the product of clear error.

Without the straw owner issue, the District Court should have determined whether the United States (which held Mr. Javat's unspecified, potential interest in the Realty) or Pennco and Calh Holding (which held the uncontested recorded deeds to their respective properties) had the superior interest in the Realty. Under any burden of proof, the deeds should have prevailed over an unspecified, potential interest. In this way too, the District Court committed clear error.

## <u>CONCLUSION</u>

Based on the foregoing, Calh Holding and Pennco request the Court to vacate the FOF (D.E. 744); vacate the Order on Verified Petitions (D.E. 742); and either (a) grant Pennco and Calh Holdings' Verified Petitions; or (b) vacate the POF (D.E. 643).

Respectfully submitted,

Stephen James Binhak, Esq.
THE LAW OFFICE OF STEPHEN JAMES BINHAK, PLLC
One Southeast Third Ave., Suite 2600
Miami, Florida 33131
Telephone: (305) 361-5500
binhaks@binhaklaw.com

By: ___/s/ *Stephen James Binhak*
Stephen James Binhak

*Counsel for Appellants Calh Holding Corp. and Pennco, LLC*

**CERTIFICATE OF COMPLIANCE**

I certify that this Motion complies with the type-volume limitation set forth in Rule 32(g)(1) and 27(d) of the Federal Rules of Appellate Procedure.  The Motion uses Times New Roman 14-point typeface and contains **12,521** words.

/s/ *Stephen James Binhak*
Stephen James Binhak

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 17, 2022, I electronically filed the foregoing with the Clerk of the Court using the Court's CM/ECF system.  I also hereby certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ *Stephen James Binhak*
Stephen James Binhak